UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

Civil Action No. 14-104-HRW

OLIVIA E. HUDSON,
and
EDWINA CORDLE                                                                PLAINTIFFS,

v.                         MEMORANDUM OPINION AND ORDER

LOUISA COMMUNITY BANK, INC.,                                       DEFENDANT.

This matter is before the Court upon Defendant Louisa Community Bank's Motion for Summary Judgment [Docket No. 17]. The motion has been fully briefed by the parties [Docket Nos. 18 and 20]. For the reasons stated herein, the Court finds that questions of fact preclude summary judgment as it pertains to Olivia Hudson; however, the Court finds that Defendant is entitled to judgment as a matter of law as to the claim of Edwina Cordle.

I.

Plaintiffs Olivia Hudson and Edwina Cordle filed this civil action against their former employer Defendant Louisa Community Bank, Inc. ("LCB"), alleging a violation of the "whistle-blower" provision of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), 12 U.S.C. §1831j.

A.   Olivia Hudson

LCB hired Olivia Hudson in early 2007 as a consumer loan officer. In her deposition, Hudson testified that during the course of her employment, she was subjected to continual sexual harassment by Gene Wilson, one of the founders and a majority shareholder of LCB. [Deposition

of Olivia Hudson, Docket No. 13, pg. 103]. She further testified that Gene Wilson's wife, Pauletta Wilson, also a founder and majority shareholder, harassed her repeatedly. *Id.* at pgs. 25-26. Hudson believed that her employment was in jeopardy. Specifically, she testified that in early 2014, the then Acting President of the Bank, Joe Adams, told her that Gene Wilson had asked him to terminate her employment. *Id.* at pgs. 137, 260. In addition, she heard that Mr. Wilson would rejoin LCB's Board of Directors after a year's absence. *Id.* at pg. 160.

Hudson raised concerns about Wilson's return to David McKenzie, one of the board members, who convened a special meeting of the board on March 14, 2014, for the express purpose of responding to Hudson's concerns. [Deposition of David McKenzie, Docket No. 15, pgs. 30–31]. During the meeting, Hudson told the Board about Pauletta Wilson's alleged harassment. She asked the Board to lay her off so that she could collect unemployment. [Docket No. 13, pg. 264]. Instead, the Board asked her to continue working at the Bank and to give them 90 days to try to fix the issues. *Id.* at pg. 283. The Board assured her that they did not intend to terminate her employment and that they did not want her to quit. *Id.* at pgs. 269, 283.

In her deposition, Hudson further testified that throughout her employment at LCB, she became aware of various banking irregularities, including, the theft of monies on deposit at LCB and the issuance of unauthorized and illegal loans orchestrated by Gene Wilson, which violated FDIC regulations. *Id.* at pgs. 136, 149-152, 157, 173-178, 325-226. She explained that she informed various management officials and board members at LCB of these wrongdoings.

Subsequently, on March 18, 2014, Hudson sent the following email to the FDIC:

> I am writing to inform the FDIC of unethical practices including but not limited to a hostile work environment, nepotism, harassment, being forced to make loans that are both undesirable and unethical: I was asked to meet with the Louisa Community Bank Board of directors for a special meeting to discuss the above mentioned items. Those in attendance

> included Roger Smith, Lonnie Hannah, Charlotte Enix, Monte Hay and by phone David McKenzie. Additionally, Interim CEO, Joe Adams joined the meeting. This meeting took place on Friday, March 14th, 2014. While there, it was discovered there were outside sources working against the current board in an attempt to have me .unjustly fired. I have been provided evidence to support this. The chairman of the board, Lonnie Hannah said that I had to do something and that he could not tell me what to do. All the members agreed that I needed to take action but felt uncomfortable in telling me what that action was (due to their liability on the board). Our bank CEO, Edgar Purdom was recently indicted on child pornography charges. Since that time, a number of incidents have occurred that I along with many other bank employees feel need to be brought to the attention of the FDIC. I have been advised by the US Attorney General office to contact an Attorney for Whistle Blowers, the FDIC and the Kentucky Attorney General's Office. I have done just what I have been instructed to do. Please contact me as soon as possible to discuss this matter. Thank you so much for your kind attention to this matter. Olivia E. Hudson.

[Docket No. 18-6].

The next day Hudson advised Joe Adams and another board member, Lonnie Hannah, that she had filed a complaint with the FDIC. [Deposition of Joe Adams, Docket No. 17-9, pg. 53].

On March 21, 2014, Gene Wilson was voted back onto the Board at the annual shareholder meeting. After the meeting, McKenzie called Hudson to let her know and to assure her that the Board intended to address her concerns. He again asked her to give the Board time, specifically, 90 days, in which to do so. *Id.* at pg. 283.

Two days later, on March 23, 2014, Hudson sent a resignation letter to the Board on March 23, 2014. In the letter, she acknowledged that the Board did not want to lose her as an employee and that the Board asked her to give them 90 days to "get things turned around." She then referenced the issues she had with Pauletta Wilson and the "stress, fear, emotional and physical toll" that the situation had caused her "over the past several years." She resigned, after thanking the Board for giving her the option to remain employed.

3

### B. Edwina Cordle

Edwina Cordle was hired by LCB upon Hudson's recommendation as an administrative assistant. She received numerous verbal performance counseling throughout her employ.

In addition to being reprimanded for her attitude and spending too much time on her cell phone or talking with Hudson, there were two breaches of confidentiality which, according to LCB, lead to the termination of her employment. [Deposition of Edwina Cordle, Docket No. 14, pgs. 150, 260-261].

Cordle testified that she understood that, during her employment, information regarding Board of Directors' communications and account information was confidential and she was not to share the information with non-LCB personnel. *Id.* at pg. 170. However, on September 11, 2013, Cordle was disciplined for disseminating information she learned at the Bank via Facebook. [Memorandum to Personnel File of Edwina Cordle, Docket No. 14, Exhibit No. 13]. Cordle admitted to doing so, but attempted to justify her behavior by insisting that she sent the social media message during her lunch hour. Notably, two days prior to the incident, on September 9, 2013, LCB employees, including Cordle, received training regarding the Bank's confidentiality policies. *Id.* During the training session, CEO Charlotte Enix specifically instructed the employees not to relay over social media anything that they saw or overhead at the Bank. *Id.* The employees were also reminded about their duty of confidentiality at the Bank. *Id.* As Cordle had disregarded the policies, she was placed on 90 days probation, and warned that any further issues would result in termination. *Id.*

On May 5, 2014, Cordle took photographs of Board of Directors' emails containing confidential Bank information and emailed them to Hudson, who, by that time, was no longer

4

employed by LCB. [Docket No. 14, pgs. 182–88]. She had also, inadvertently, sent three of the emails to Hudson's former Bank email address, which, upon Hudson's departure from LCB, had been re-routed to Enix. *Id.* at pg. 188. After receiving the emails, and realizing that Cordle had, again, acted against Bank policy, despite being previously disciplined for similar conduct and warned that termination would result from additional misconduct, Enix decided termination was appropriate. [Declaration of Charlotte Enix, Docket No. 17-1, ¶ 15]. In her deposition, Cordle admits she knew termination was the likely result of this incident. [Docket No. 14, pg. 207].

On May 15, 2014, upon her attorney's request, Cordle notified the Board, via email, that she had filed a complaint with the FDIC. *Id.* at p. 151. In her communication with the FDIC, she referred to "2 instances of nepotism." She goes on to state that she "took out a loan...and had to use [her] car as collertal" whereas two other employees seeing loans were treated more favorably." [Docket No. 14, Exhibit 7]. She concludes her report by stating: "I am also aware of a breach in confidentiality of one of our loan officer. Additionally, policy is made up and changed at will. The work environment here is very hostile." *Id.*

When Enix learned of the report to the FDIC, she stopped the termination process until she could consult with the Board and other managers. [Docket No. 17-1, ¶ 16].

On July 1, 2014, Gene Wilson, Charlotte Enix, Patty Carter, and Joe Adams met with Cordle regarding issues with her employment, including the two instances described *supra*. The managers asked Cordle to identify any issues that she had at the Bank that needed to be redressed. Cordle admitted that she may have been "hostile" during this meeting and refused to identify any issues. [Docket No. 14, pg. 247]. After meeting with Cordle, management decided that termination was appropriate, as Enix originally had determined. *Id.*

5

Seven days later, Plaintiffs instigated this lawsuit, claiming retaliation in violation of 12 U.S.C. § 1831j.

Defendant seeks judgment as a matter of law as to all claims alleged.

## II.

In 1986, the United States Supreme Court set forth the standard for summary judgment in a trilogy of cases: *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), *Celotex v. Cartett*, 477 U.S. 317. 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Following this precedent and Fed.R.Civ.P. 56( c), the moving party is entitled to judgment as a matter of law when "[t]he pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact." Summary judgment is mandated against a party who has failed to establish an essential element of his or her case after adequate time for discovery. In such a situation, there is no genuine issue of material fact as the failure to prove an essential fact renders all other facts irrelevant. *Celotex v. Cartett*, 477 U.S. at 322-323.

The United States Court of Appeals for the Sixth Circuit has interpreted the United States Supreme Court's trilogy as requiring the nonmoving party to produce enough evidence, after having had a reasonable opportunity to conduct discovery, so as to withstand a directed verdict motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).

### III.

Section 1831j of Title 12 of the United States Codes provides, in pertinent part, as follows:

**(a) In general**
**(1) Employees of depository institutions**
No insured depository institution may discharge or otherwise discriminate against any employee with respect to compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to the request of the employee) provided information to any Federal banking agency or to the Attorney General regarding—
(A) a possible violation of any law or regulation; or
(B) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety;
by the depository institution or any director, officer, or employee of the institution.

12 U.S.C. §1831j.

In order to establish a violation of this Section, Plaintiffs must establish that (1) they provided information to the FDIC regarding one of the enumerated items; (2) they suffered an adverse action; and (3) their disclosures were a contributing factor in the adverse employment actions. *See Mann v. Fifth Third Bank, et al.*, 2011 U.S. Dist. LEXIS 44853, *4–5 (S.D. Ohio April 25, 2011.) The burden then shifts to the Defendant to prove that it would have taken the same action regardless of the protected conduct.

In order to establish that the protected disclosure was a contributing factor, Plaintiffs must show that Defendant had actual knowledge of their disclosures and that the decision in question was made close enough in time that a reasonable inference can be drawn that it was a contributing factor in Defendants' decision. *Id.* at *4.

Moreover, not every communication with the FDIC qualifies for protection under the act.

In order to establish a violation of 12 U.S.C. § 1831j, the information reported must concern a possible violation of law or gross mismanagement, gross waste of authority or substantial and specific danger to public health or safety. In other words, personal grievances are not considered a protected disclosure.

With these standards in mind, and viewing the facts in a lost most favorable to the non-moving parties, in this instance, the Plaintiffs, the Court will examine each of their claims.

**A.     Olivia Hudson's claim withstands summary judgment.**

As to the first prong of the three-pronged inquiry, to-wit: the substance of what Hudson reported to the FDIC, the parties do not appear to dispute that it falls under the purview of §1831j. They do, however, hotly contest that Hudson suffered an "adverse employment action." LCB contends that Hudson was never demoted, her pay was never reduced, and she received no discipline at any time during her employment. Indeed, Hudson admits as much in her deposition. [Docket No. 15, pg. 184]. Moreover, LCB points out that In her resignation letter dated March 23, 2014, Hudson acknowledged that the Board did not want her to quit. [Docket No. 15, Exhibit 13]. She also acknowledged that the Board asked her to give them 90 days to "get things turned around." *Id.* She even thanked the Board for giving her the option to remain employed. *Id.* According to LCB, she left her employment of her own accord, without affording her employer to address any concerns she may have had.

Hudson, on the other hand, maintains her departure from LCB was not voluntary; she claims she was constructively discharged. She states that when she left, an offer of a 90 day improvement was a hollow overture, given that Gene Wilson was, once again, part of LCB's leadership. She claims to have endured years of Wilson's sexual harassment and threatening

behavior; she insists that she had no reason to believe that anything would change after Wilson returned to the Board. Hudson maintains that her only option was to resign from LCB.

Hudson's fervent arguments regarding constructive discharge beg another fiercely contested question: whether her report to the FDIC was a contributing factor in her termination or constructive termination. LCB argues that Hudson made her report to the FDIC after she believed termination was imminent, and, as such, is not causally connected *Id.*, pg. 137. The only individuals that Hudson claims had any intent to terminate her were the Wilsons, and that intent, to the extent it was expressed at all, was expressed long before she complained to the FDIC. *Id.* Hudson, on the other hand, contends that her report to the FDIC was a factor in the circumstances which resulted her leaving LCB.

The "he-said, she-said" nature of the parties' arguments underscore that employment discrimination cases are riddled with issues of credibility and intent, with a good amount of wiggle room, if you will, for the fact finder to draw inferences. As such, summary judgment, which requires that no material facts be in dispute, is inappropriate.

This is not to say that Hudson will ultimately prevail. The undersigned cannot predict the end result. However, this Court does find that the murky factual landscape of Hudson's case precludes summary judgment.

**B.     Edwina Cordle claim fails as matter of law.**

By contrast, the clarity in Cordle's claim can easily be described as "crystal." Her claim fails at every inquiry under 12 U.S.C. § 1831j. First, as to the substance of her report to the FDIC, Cordle cannot meet her *prima facie* burden because she did not report a possible violation of any law or regulation or any gross mismanagement, gross waste of funds, abuse of

9

authority, or a substantial and specific danger to public health or safety. Rather, in her complaint to the FDIC, Cordle stated that she felt that another employee received a better loan than she did. Cordle's complaint does not rise to the level required to be protected under the statute. Cordle does not dispute this.   Indeed, Cordle has offered no argument or facts to establish that she engaged in the type of activity protected under 12 U.S.C. 1831j and has not addressed or responded to Defendant's dispositive motion in this regard.

Moreover, Cordle cannot establish that her complaint to the FDIC was a contributing factor to her termination. Enix decided to terminate Cordle's employment before she knew that Cordle had complained to the FDIC; Cordle's termination was in the works before she ever notified the Bank of her Complaint. *See e.g. Reynolds v. Fed. Express Corp.*, 544 Fed. App'x 611, 615 (6th Cir. 2013) (evidence that decision-maker contemplated termination before he learned of plaintiffs' complaint of discrimination prevent plaintiffs from establishing temporal proximity necessary for causal connection, even where termination occurred 20 days after the complaint of discrimination); *Van Winkle v. HM Ins. Group, Inc.*, 2014 U.S. Dist. LEXIS 175786 (E.D. Ky. Dec. 18, 2014)(although plaintiff's termination followed her EEOC charge, because her employer proceeded according to previously contemplated lines, temporal proximity was not sufficient to establish causation). An employee cannot prevent a planned termination by simply notifying her employer that she is a whistleblower. At best, Cordle's email to the FDIC merely delayed the termination process while the Board and management attempted to address any concerns that she had and determine whether any issue justified vacating the termination decision. Cordle has not, and cannot, come forth with enough evidence to carry her burden under 12 U.S.C. 1831j. Based upon the record, Cordle's claim cannot pass Rule 56 muster.

IV.

Accordingly, **IT IS HEREBY ORDERED** that Defendant Louisa Community Bank's Motion for Summary Judgment [Docket No. 17] be **SUSTAINED** as it pertains to Edwina Cordle and **OVERRULED** as it pertains to Olivia Hudson.

This is an **INTERLOCUTORY** and **NON-APPEALABLE** Order.

This 30th day of November, 2015.



Signed By:
*Henry R. Wilholt, Jr.*
United States District Judge